# 𝕎𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢

## SAMUEL KELLY v. COMMONWEALTH.

June 14, 1943.

Record No. 2680.

Present, All the Justices.

The opinion states the case.

*E. A. Norrell* and *J. C. Robertson*, for the plaintiff in error.

*Abram P. Staples, Attorney General,* and *Walter E. Rogers, Assistant Attorney General,* for the Commonwealth.

CAMPBELL, C. J., delivered the opinion of the court.

Plaintiff in error, Samuel Kelly, was indicted for the larceny of goods, wares and merchandise of the value of $606, the property of Alco Stores a corporation trading as A and B Leader Clothing Store, situated in the city of Richmond. Upon his arraignment, accused entered a plea of not guilty, and, pursuant to section 8 of the Constitution, a trial by jury was waived and all matters of law and fact were submitted to the court. The court, after having heard all the evidence, found the accused guilty of grand larceny, as charged in the indictment, and fixed his punishment at confinement in the penitentiary for a period of three years.

It appears from the evidence that Kelly had been for a number of years employed as an outside salesman by the Alco Store. As such, he was authorized to take from the store, after proper checking, men's suits and women's dresses in order to show them to prospective purchasers. He merely received orders for goods and upon a return of the goods to the store, they were then delivered to the purchasers.

During the inventory in August, 1941, it was discovered that there was a huge shortage in goods which had been purchased by the store and for which no account could be made. On March 7, 1942, in investigating the larceny of goods from one Ollie Curtiss, who conducted a cleaning and pressing establishment, the police received information that certain merchandise belonging to the Alco Store was located in a building at 504 North 1st Street, in Richmond. After a search warrant was secured, A. D. Lapkin, the manager of the store, was called and over the objection of accused, the building was searched. As a result of the search, merchandise of the value of $600 was found and positively identified as the goods, clothes and merchandise of the Alco Store. It developed that the accused sub-leased the building from Curtiss for the purpose of opening a small clothing shop and to conduct a cleaning and pressing shop.

While in the building, Lapkin asked Kelly, "Did anyone help you to get this merchandise out of our place?" His reply was "No one helped me to get them out of your place. I bought them from a man traveling through here." Also, while in the building, Kelly stated to Police Sergeant Blazly that he bought the clothes from a man named Solomon. However, when testifying later as a witness, Kelly stated that he bought the clothes from a dealer in New York by the name of Sam Jacobs. When the clothes found in Kelly's place were examined, it was disclosed that the labels on the various garments had been removed.

The book containing a list of the clothes delivered to Kelly disappeared from the store. A witness, Mrs. Moore, testified that she saw Kelly wrap up a book which answered the description of the record book and carry it from the store. It also appeared in evidence that Kelly had free access to the goods in the store.

It is assigned as error that the court erred in refusing to strike the evidence as "not sufficient to support a conviction," and in refusing to set aside the judgment on the ground that it was contrary to the law and the evidence.

These assignments are so inter-related that only one question is presented for our consideration, viz: Was there error in overruling the motion of the accused for a new trial?

It is a general rule of the common law, which is extant in this Commonwealth, that the possession of goods recently stolen is *prima facie* evidence of guilt, and the burden of accounting for that possession is thrown upon the accused.

It is true that in the trial court the accused denied *in toto* the evidence of the Commonwealth tending to show guilt. However, he stands in this court in the position of having had all conflicts in the evidence resolved against him and, therefore, his reliance here is upon the sufficiency of the evidence adduced by the Commonwealth to prove his guilt beyond a reasonable doubt.

The following contentions are made by the accused: First, that the Commonwealth has failed to show that he was guilty of the crime of larceny; Second, if the evidence tended to show that he was a thief, there was no proper identification of the goods found in his possession.

In disposing of the first contention, it is only necessary to advert to these salient features disclosed by the evidence: The accused had the opportunity to purloin the various garments; when faced with a search of his premises, he objected to Lapkin, the manager of the store, entering his premises, thus seeking to forestall an identification of the goods; he gave a false account of his possession of the merchandise, first stating that he purchased it from Solomon and then stating that the seller thereof was named Jacobs. It is also to be noted that the labels on the garments found in the possession of the accused had been removed. Then, too, the record book showing the various transactions with accused was missing from the store and there was positive evidence that accused was seen with a book answering the description of the missing record book.

■ In *Gravely* v. *Commonwealth*, 86 Va. 396, 400, 10 S. E. 431, it was held that possession of stolen goods is a most material circumstance to be considered by the jury and when, in addition to such possession, other inculpatory circumstances are proved—such, for example, as the refusal of the accused to give any account of how he came into possession of the goods—such proof will warrant a conviction.

There is no merit in the first contention.

Since the opinion of this court, rendered in 1887, in *Gravely* v. *Commonwealth, supra*, there has been no doubt as to the applicable rule relative to the identification of stolen goods when the identity of the goods is incapable of strict proof. In that case the accused was indicted and tried for the larceny of one hundred pounds of flour, thirty pounds of meal and two dozen eggs. The same contention on the question of identification of the goods found in the possession of the accused was made as is here made. In holding that the contention was without merit, Judge Lewis said:

■ "Applying this rule to the present case, we are of opinion that although there was not strict proof of the identity of the stolen flour, yet that in view of the nature of the article, the recency of the possession, and all the surrounding circumstances, the evidence was sufficient. At all events, it was not *plainly* insufficient. 'Unless the possession be recent,' says Starkie, 'it is necessary to give strict proof of the identity of the goods, which is not so requisite where the possession is *very recent*.' 2 Stark. Ev., 841."

The rule above stated is controlling in the case at bar.

Lapkin testified that the goods were identical in type with those which he had purchased from various manufacturing concerns. At the trial he had goods from the store with which to compare them. The Alco Store had the exclusive agency from the manufacturers to sell the various particular type of suits in Richmond. Moreover, the goods found in the accused's place were definitely found to be types of goods which were known to be missing from the Alco

Store. The Alco Store had invoices for a certain number of suits of certain types, a given number of which had been sold, and a given number of which were still on hand, leaving a certain number unaccounted for. Suits of those types were found in accused's place.

Since the case was tried by the court there has not been even a suggestion of bias or prejudice in regard to the judgment rendered.

In our opinion there is sufficient evidence to support the judgment and, therefore, it will be affirmed.

*Affirmed.*